922 F.2d 1418
 Guy Stuart BELL, on behalf of himself and all other
taxpayers, citizens and electors of the City of
Kellogg, Plaintiff-Appellant,
and
William H. Lamphere, on behalf of himself and all other
state and federal taxpayers, Plaintiff-Appellant,
v.
CITY OF KELLOGG; United States Department of Agriculture
Division of Forest Service; Bunker Limited
Partnership; Charles L.A. Cox, et al.,
Defendants-Appellees.
 Nos. 89-35685, 89-35686 and 90-35368.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Dec. 5, 1990*.
Decided Jan. 8, 1991.
 
 Guy Stuart Bell, Kellogg, Idaho, pro se.
 William H. Lamphere, Whitesboro, N.Y., pro se.
 John O. Cossell, Wallace, Idaho, Charles L.A. Cox, Evans, Keane, Koontz, Boyd, Simko & Ripley, Kellogg, Idaho, Nancy A. Pohlman, Witherspoon, Kelley, Davenport & Toole, Coeur d'Alene, Idaho; D. Marc Haws, Asst. U.S. Atty., Boise, Idaho, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before GOODWIN, Chief Judge, WRIGHT and NOONAN, Jr., Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 The two pro se appellants before us are unhappy with the results of a local tax levy election. Federal court is not a forum for airing discontent with the electorate's political decisions. We affirm the district court's dismissal of this action for lack of standing and for failure to meet state statutory requirements for contesting an election.
 
 
 2
 * On December 21, 1987, Congress passed House Joint Resolution 395, which provided a $6.4 million grant to the City of Kellogg, Idaho, for construction of a gondola for transportation from the city to the Silverhorn ski and recreation area, now called Silver Mountain. In addition, the United States Forest Service was authorized to conduct a public-for-private land exchange.
 
 
 3
 To provide the necessary matching funds, the city held an election on September 27, 1988 to get voter approval of a tax levy of $100,000 per year for twenty years. Following Idaho law, a sample ballot was published, posted and made available to the public on September 12. On September 13 and 20, the ballot, the notice of election and the ordinance authorizing the election were published. The tax levy passed, gaining 82.5% of the vote.
 
 
 4
 William Lamphere and Guy Bell initiated a suit in state court,[1] alleging that the land exchange and funding of the gondola were improper. They also contested the validity of the election under state law, alleged that information was withheld and the public misled, and asserted that public officials were serving private rather than public interests. Twenty-two defendants were named including the city, the mayor, city council members, the city's attorneys, private parties involved in the gondola project and the Forest Service. The complaint sought declaratory and injunctive relief, and damages in the amount of the allegedly misused public funds.
 
 
 5
 The suit was removed to federal court by the Forest Service. The district court granted Lamphere's motion for voluntary discontinuance, which it interpreted as a motion for voluntary dismissal. Bell's claims, except those against the city, were dismissed for lack of jurisdiction because Bell lacked standing. The claims against the city were dismissed for failure to post a bond as required by state law. A second order was entered after Lamphere and Bell filed their notices of appeal. In that order, Judge Ryan awarded attorneys' fees to two defendants, denied Bell's motion to reconsider and denied Lamphere's motions for relief from the judgment and to remand to state court.
 
 
 6
 Appellants appeal both orders. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 II
 
 7
 Lamphere argues that the dismissal of his claims upon his motion for voluntary discontinuance violated his constitutional rights of due process and equal protection. He claims he intended to assign his interest in the suit to Bell and thereby discontinue his prosecution of the case because he was moving to New York state.[2]
 
 
 8
 The court interpreted the motion as one for voluntary dismissal. The order granting the motion failed to specify whether the dismissal was with or without prejudice. When unspecified, Federal Rule of Civil Procedure 41(a)(2) deems such dismissals as made without prejudice.
 
 
 9
 Generally, a plaintiff may not appeal a voluntary dismissal because there is no involuntary or adverse judgment against him. Unioil, Inc. v. E.F. Hutton & Co., 809 F.2d 548, 555 (9th Cir.1986), cert. denied sub nom., Barton v. E.F. Hutton & Co., 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). Without an adverse impact, there is no standing to contest the voluntary dismissal. Chromalloy Am. Corp. v. Fischmann, 716 F.2d 683, 687 (9th Cir.1983).
 
 
 10
 Because the dismissal was without prejudice, the only possible impairment of rights here is the district court's alleged failure to recognize that Lamphere's motion might have been conditioned on his assignment of rights to Bell. The language of the motion, however, was not conditional, nor did it recite any authority for such assignment. Under the circumstances, Lamphere suffered no impairment of rights.
 
 
 11
 Even if Lamphere had standing to appeal, this court reviews a grant of voluntary dismissal under Rule 41(a)(2) for abuse of discretion. Hamilton v. Firestone Tire & Rubber Co., 679 F.2d 143, 145 (9th Cir.1982). The court did not abuse its discretion by granting his request to be released from the case.
 
 
 12
 Because Lamphere's claims were dismissed properly we need not address his remaining substantive arguments.
 
 III
 
 13
 Bell claims to represent federal and state taxpayers and citizens, asserting three general harms as grounds for standing to assert constitutional claims: (1) the misuse of tax money by federal and local funding of the gondola project, (2) the Forest Service's failure to follow its own regulations for land exchanges, including a failure to assess the mineral value of the land before it was traded, and (3) the withholding of information from the electorate as an impairment of the right to vote and a violation of due process and equal protection.
 
 
 14
 The threshold question is whether Bell has alleged "distinct and palpable" injuries to himself. Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Without actual injury and redressability, there is no case or controversy under Article III of the federal constitution and no federal jurisdiction. Id. at 498, 95 S.Ct. at 2204. In addition to the constitutional requirements of Article III, several prudential rules have been crafted. Two are relevant to our inquiry: federal courts are not forums for hearing generalized grievances by taxpayers and citizens, and a party must assert his own rights, not those of others. Id. at 499-500, 95 S.Ct. at 2205.
 
 
 15
 * To have standing as a federal taxpayer to challenge governmental action, a plaintiff must meet the two-part test of Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), which serves as an overlay to the minimum Article III requirements. First, there must be a logical connection between the plaintiff's status as a taxpayer and the type of legislation attacked, meaning the suit must challenge actions taken under the tax and spending clause of the federal constitution. Schlesinger v. Reservists to Stop the War, 418 U.S. 208, 227-228, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974). Second, there must be a link between the taxpayer's status and an alleged constitutional violation. Flast, 392 U.S. at 102, 88 S.Ct. at 1953. The plaintiff must articulate a constitutional limitation on the governmental acts in question.
 
 
 16
 Bell does not challenge either the constitutionality of House Joint Resolution 395 or the actions of the Forest Service.[3] His mere disagreement with a governmental decision will not suffice to meet the Flast test. Only Bell's allegation that taxpayer money was misused satisfies the first prong of the Flast test. He fails to meet the second prong, however, because he alleges no constitutional limitation on Congress' ability to approve the grant and land exchanges needed for the gondola development.
 
 
 17
 Under the prudential standing rules, a federal court will not provide a forum to air "generalized grievances about the conduct of government." Flast, 392 U.S. at 106, 88 S.Ct. at 1956. Complaints that citizens lack information to follow government action or be informed when voting are not sufficiently particularized injuries to support standing as a taxpayer. Such a plaintiff's place is at the polls, not in federal court. United States v. Richardson, 418 U.S. 166, 176, 179, 94 S.Ct. 2940, 2946, 2947, 41 L.Ed.2d 678 (1974).
 
 
 18
 Bell may not predicate his standing as a federal citizen upon an interest held generally by the public. An injury to all citizens is necessarily abstract in nature. Schlesinger, 418 U.S. at 220, 94 S.Ct. at 2931. A plaintiff must have a personal stake in the outcome. Motive or sincerity of commitment to the cause is irrelevant to the inquiry. Id. at 225-26, 94 S.Ct. at 2934.
 
 
 19
 A general assertion that the Kellogg area will be economically affected by the project is not enough to establish the requisite stake in the outcome. Bell's injury from the $6.4 million grant and the land exchange is unknown, abstract and not concrete. His challenge is nothing more than dissatisfaction with a political decision.
 
 
 20
 We hold that Bell lacks standing to pursue his claims as a federal taxpayer or citizen.
 
 B
 
 21
 The same constitutional standing principles apply to those suing in federal court as state taxpayers. Asarco Inc. v. Kadish, 490 U.S. 605, 612, 109 S.Ct. 2037, 2043, 104 L.Ed.2d 696 (1989). While it is unclear whether the prudential rule of Flast applies in this context, Hoohuli v. Ariyoshi, 741 F.2d 1169, 1178-80 (9th Cir.1984) (interpreting the state taxpayer standing rule as requiring a pocketbook injury), it is clear that a state taxpayer must show " 'direct injury,' pecuniary or otherwise." Asarco, 109 S.Ct. at 2043 (quoting Doremus v. Bd. of Education of Hawthorne, 342 U.S. 429, 434, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952)). A causal link between that injury and the defendant's conduct must be shown, and there must be a substantial likelihood that the relief requested will redress the injury. McMichael v. County of Napa, 709 F.2d 1268, 1270 (9th Cir.1983).
 
 
 22
 As discussed above, Bell fails to point to a specific direct harm to himself. Beyond his challenges grounded on violations of the state election statute, he has only a general dissatisfaction with the political decisions to back the gondola project and the voters' passage of the levy. Even if these dissatisfactions were a sufficient harm, the causal link is lacking. He cannot show that the defendants' withholding of information caused 82.5% of the electorate to vote for the measure. See id. at 1271; see also Asarco, 109 S.Ct. at 2043-44 (discussing lack of causation and redressability).
 
 
 23
 We conclude that Bell lacks standing as a state taxpayer or citizen.
 
 IV
 
 24
 We turn to the state statutory grounds for Bell's suit. He asserts that he met all the procedural requirements of Idaho Code Sec. 34-2001A, which establishes a right to contest a bond or mill levy election. He also argues that the statutory remedy for contesting an election is not exclusive and that his tort claims go beyond merely contesting the validity of the election.
 
 
 25
 We review de novo questions of state law. Matter of McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). We also review de novo a grant of summary judgment or a dismissal under Federal Rule of Civil Procedure 12. Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir.1989); Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 732 (9th Cir.1987).
 
 
 26
 As a preliminary matter, Sec. 34-2001A(A) specifies that the party calling the election will be the defendant in an action contesting that election.[4] The district court found correctly that only the city could be sued in conjunction with an election contest. With respect to all other defendants, there is no standing to sue under this statute.[5]
 
 
 27
 Under Sec. 34-2001A, all provisions of chapter 20 of title 34 of the Idaho Code apply to bond and mill levy election contests.[6] In order to contest an election, the Code requires that a bond be posted.[7] Bell does not deny that he failed to post a bond, and the district court correctly dismissed his challenges to the election procedures and the adequacy of notice and publication.
 
 
 28
 The Idaho Supreme Court has held that the election contest statute is the exclusive remedy for challenging any election. Harrison v. Board of County Commissioners of Bannock, 68 Idaho 463, 198 P.2d 1013, 1015 (1948). Bell maintains that the legislative scheme is procedural only and does not preclude other substantive causes of action such as fraud, misrepresentation and breach of trust and fiduciary duty.
 
 
 29
 The election contest statute plainly encompasses all challenges to election-based activity. Section 34-2001A(B) applies to contests "upon any of the grounds enumerated in section 34-2001 ... or upon any other grounds whatsoever." Furthermore, the Idaho court has held that false or fraudulent statements or representations by public officials and others intended to influence voters will not invalidate an election, unless voters were forced or compelled to vote contrary to their will. Harrison, 198 P.2d at 1017.
 
 
 30
 Bell's state law claims fall within the election contest statute and are barred for failure to post a bond.
 
 V
 
 31
 Appellants urge this court to reverse the dismissal of their pendent state claims. They argue the claims should have been remanded to state court once the federal claims were dismissed for lack of subject matter jurisdiction.
 
 
 32
 Following removal "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. Sec. 1447(c) (1988).[8] Several district courts have interpreted Sec. 1447(c) as removing the discretion to deny remand once a federal court determines that it lacks subject matter jurisdiction in a removal case. E.g., Teer v. Upjohn Co., 741 F.Supp. 1242, 1244 (M.D.La.1990); Gray v. Moore Business Forms Inc., 711 F.Supp. 543, 545 (N.D.Cal.1989). Where the remand to state court would be futile, however, the desire to have state courts resolve state law issues is lacking. We do not believe Congress intended to ignore the interest of efficient use of judicial resources.
 
 
 33
 The First Circuit has implied that it would be willing to recognize an exception to Sec. 1447(c) where there is "absolute certainty that remand would prove futile." M.A.I.N. v. Commissioner, Maine Dept. of Human Servs., 876 F.2d 1051, 1054 (1st Cir.1989). The court was unwilling to apply such an exception in M.A.I.N. because a successful assertion of standing in state court was conceivable. Id. There is no such hope here.
 
 
 34
 The state election statute provided the only state cause of action for the plaintiffs. The state court would have simply dismissed the action on remand due to the fatal failure to comply with the bond posting requirement. Because we are certain that a remand to state court would be futile, no comity concerns are involved. District court resolution of the entire case prevents any further waste of valuable judicial time and resources. The district court correctly denied the motion to remand and dismissed the state claims.
 
 VI
 
 35
 Appellants argue that they should have been given leave to amend to cure the standing defect before the court dismissed the case. A denial of leave to amend is reviewed for abuse of discretion. Under Federal Rule of Civil Procedure 15(a), leave to amend should be given freely, but need not be granted when it would be futile in saving the plaintiffs' case. Universal Mortgage Co. v. Prudential Ins. Co., 799 F.2d 458, 459 (9th Cir.1986). No amendment could save these plaintiffs. There was no abuse of discretion.
 
 
 36
 We have considered appellants' other contentions that the district court abused its discretion in applying various procedural rules and find all arguments to be without merit.
 
 VII
 
 37
 Appellants ask for attorneys' fees under Idaho Code Sec. 12-121 and Idaho Rules of Civil Procedure 54(e). Rule 54(e) creates no substantive right to attorneys' fees under Idaho law. Huff v. Uhl, 103 Idaho 274, 647 P.2d 730, 733 n. 1 (1982). Because Rule 54(e) is procedural in nature, this court is not bound by it or Sec. 12-121. Wetzel v. Goldsmith, 16 B.R. 206 (D.Id.1981); see Burlington N.R. Co. v. Woods, 480 U.S. 1, 7-8, 107 S.Ct. 967, 970-71, 94 L.Ed.2d 1 (1987).
 
 
 38
 This court can award attorneys' fees for frivolous appeals under Federal Rule of Appellate Procedure 38. See Wood v. Santa Barbara Chamber of Commerce, Inc., 699 F.2d 484, 485-86 (9th Cir.1983) (awarding fees against a pro se plaintiff), cert. denied, 465 U.S. 1080, 104 S.Ct. 1445, 79 L.Ed.2d 765 (1984). An appeal is frivolous when the result is obvious or the appellants' arguments are wholly without merit. Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 653 (9th Cir.1988); McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981).
 
 
 39
 Appellants' standing arguments are wholly without merit. The federal court is not the place to air general political grievances. The state law claims were also meritless because, as held by the district court, the failure to post the required bond precluded the appellants' actions. We award the appellees attorneys' fees for this frivolous appeal.
 
 CONCLUSION
 
 40
 Lamphere lacks standing to appeal the district court's grant of his voluntary dismissal of his claims. Therefore he has no standing to appeal the merits of his claims. Bell fails to allege a sufficiently concrete or direct harm to have standing as a federal or state taxpayer or citizen. His statutory challenges to the election are barred because he failed to file the required bond. Because the statute scheme is an exclusive remedy, his tort claims are precluded as well. The district court correctly resolved the whole case by dismissing it because a remand to state court would have been futile.
 
 
 41
 We AFFIRM and award attorneys' fees to the appellees for this frivolous appeal.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Bell owns commercial real estate and resides in Kellogg. Lamphere, an attorney, operated his business in the City of Pinehurst and lived in the City of Wallace, both located near Kellogg. At the time of briefing, Lamphere lived in New York state
 
 
 [2]
 Lamphere's claims appear to be identical to Bell's. In fact Bell adopted Lamphere's brief as his own on appeal
 
 
 [3]
 For authority to challenge the Forest Service action, Bell, via Lamphere's brief, relies on 5 U.S.C. Sec. 702. A citation to a statute creating a private cause of action is not enough to have standing to bring the action. There must be an "injury in fact," which requires "more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Sierra Club v. Morton, 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). Like the Sierra Club plaintiffs, Bell fails to allege how the Forest Service's actions and alleged violations of its regulations will affect or harm him. See id.; United States v. SCRAP, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973). Bell lacks standing under 5 U.S.C. Sec. 702 to challenge the agency action
 
 
 [4]
 The relevant portion of Sec. 34-2001A(A) provides: "Any such contest shall be regarded as one contesting the outcome of the vote on the bond or mill levy proposition ... and the public entity calling the election ... shall be regarded as the defendant."
 
 
 [5]
 Bell interprets the statute as granting a cause of action against the city but not limiting his ability to name other defendants. Even if that were true, the claims must still be dismissed for failure to comply with the statutory procedures as discussed below
 
 
 [6]
 B. When the validity of any bond or mill levy election is contested upon any of the grounds enumerated in section 34-2001, Idaho Code, or upon any other grounds whatsoever the plaintiff or plaintiffs must, within forty (40) days after the votes are canvassed and the result thereof declared, file in the proper court a verified written complaint setting forth, in addition to the other requirements of the chapter
 Idaho Code Sec. 34-2001A(B) (1980) (emphasis added).
 
 
 [7]
 The relevant part of Sec. 34-2008 provides that "[t]he contestant must also file a bond, with security to be approved by the clerk of the court or district judge...."
 
 
 [8]
 Before the 1988 amendment, this statute required a court to remand, "[i]f at any time before final judgment it appear[ed] that the case was removed improvidently and without jurisdiction." 28 U.S.C. Sec. 1447(c)
 The appellees' citation to Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), is not helpful here. Finley discusses the lack of pendent-party jurisdiction, not the application Sec. 1447(c) to pendent claims. See id., 109 S.Ct. at 2010.