15 F.3d 1088
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 PACIFIC INSTITUTE FOR RESEARCH AND EVALUATION, Plaintiff-Appellant,
v.
PROCTER & GAMBLE CO.; Procter & Gamble Co., Distributing
Co., Defendants-Appellees.
 No. 92-15660.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 2, 1993.*
Decided Dec. 14, 1993.
 
 1
 Before: KOZINSKI and O'SCANNLAIN, Circuit Judges; KELLEHER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 The Pacific Institute for Research and Evaluation brought suit against the Procter & Gamble Company and the Procter & Gamble Distributing Company for tortiously interfering with contractual relations and prospective economic advantage. The district court granted partial summary judgment and excluded evidence concerning events taking place after the contractual breach. Appellant seeks reversal of the grant of partial summary judgment and the decision to exclude evidence, and requests a new trial. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 4
 * Appellant Pacific Institute for Research and Evaluation ("PIRE") is a non-profit corporation formed to establish and to study drug abuse prevention programs. In 1986, PIRE spun off the Just Say No Foundation ("the Foundation") as a separate non-profit entity. Two PIRE employees, Tom Adams and Joan Brann, left to head the Foundation. PIRE contends that the Foundation (through Adams and Brann) and PIRE agreed, inter alia, that upon incorporation: (1) the Foundation would be obligated to repay PIRE for its pre-incorporation expenses; (2) PIRE would advance money after incorporation subject to reimbursement; and (3) all loans would be repaid by the Foundation as revenue became available.
 
 
 5
 In February 1987, Procter & Gamble ("P & G") approached the Foundation with an ad campaign. In May 1987, Adams hired former P & G employee, Ivy Cohen, as the Foundation's Executive Director. PIRE's fiscal agency with the Foundation concluded on September 30, 1987. On December 1, 1987, Tom Adams and Ivy Cohen wrote a letter informing PIRE that the Foundation would not pay PIRE for pre-incorporation expenses, but would pay its net post-incorporation expenses, allegedly breaching the 1986 pre-incorporation agreement.
 
 
 6
 In March 1988, Wallace Abbott, a Senior Vice-President at P & G, was selected to be Chairman of the Foundation's Board of Directors. In August 1988, Adams was apparently forced to resign. In October 1988, Brann was excluded from a Board of Directors' meeting and removed from the Board.
 
 II
 
 7
 The district court granted P & G's motion in limine to exclude evidence from the trial concerning the selection of Wallace Abbott as the Foundation's Chairman of the Board. The district judge determined that the evidence was irrelevant because these events took place in 1988, after the alleged breach of the pre-incorporation agreement in 1987.
 
 
 8
 PIRE contends that this evidence is relevant to P & G's intent to interfere with the Foundation/PIRE contract. PIRE argues that under Federal Rule of Evidence 404(b), evidence of subsequent acts may be admissible to show intent or plan. PIRE cites cases where courts have admitted evidence of a party's subsequent acts in order to show intent with respect to a previous act. However, at best this shows that it is not an abuse of discretion to admit such evidence; it does not prove the converse. PIRE cites no cases where a district court was held to have abused its discretion for not admitting evidence of subsequent acts.
 
 
 9
 PIRE argues that in addition to the partial breach on December 1, 1987, there was another breach on November 15, 1988. PIRE contends that the excluded evidence went to the intent and proximate cause of this later breach. This argument contrasts with PIRE's position before the district court that the breach occurred in the fall of 1987, when the Foundation repudiated its debt obligations. Although subsequent actions may have been consistent with a breach in 1987, PIRE presents no evidence or case law explaining why this would constitute an independent breach after the fall 1987 debt repudiation. This court has held that a district court does "not abuse its discretion by excluding evidence that 'was only slightly relevant, if at all, and [that] was clearly collateral to the central issues of the trial.' " Brown v. Sierra Nevada Memorial Miners Hosp., 849 F.2d 1186, 1191 (9th Cir.1988) (quoting United States v. Stewart, 770 F.2d 825, 830 (9th Cir.1985), cert. denied, 474 U.S. 1103 (1986)). We conclude that the district court did not abuse its discretion; the evidence of subsequent events was, at best, only slightly relevant and was clearly collateral.
 
 
 10
 PIRE also contends that the district court's order is based on the mistaken belief that no damages were sought other than pre-incorporation expenses. PIRE claims it also sought certain post-incorporation damages. But the excluded evidence does not concern the amount of damages; rather, it goes to breach and intent to induce breach. The district court did not abuse its discretion in determining that this evidence was irrelevant to these issues.
 
 III
 
 11
 The district court also granted P & G's motions in limine to exclude evidence regarding the circumstances by which Joan Brann was removed from the Foundation's Vice-Presidency and Tom Adams was apparently forced to resign. The district court held that the evidence was irrelevant and that, to the extent that it might be relevant, it should be excluded under Federal Rule of Evidence 403 because its probative value was substantially outweighed by its tendency to cause confusion or delay and to waste time at trial.
 
 
 12
 PIRE argues that the evidence of the removal of Adams and Brann was relevant to the breach of contract because P & G could not have made the Foundation renounce its obligations to PIRE with them at the helm. According to PIRE's complaint, however, the Foundation initially renounced its obligations in 1987, before Adams and Brann were removed. PIRE also argues that the evidence of subsequent acts can be relevant to show intent, but PIRE has presented no case law suggesting that exclusion of such evidence is an abuse of discretion.
 
 
 13
 Furthermore, we need not reach the relevance question because the evidence is independently excludable under Rule 403. PIRE argues that there is no evidence of unfair prejudice. However, the district court did not exclude the evidence based on prejudice; rather, the court held that the evidence would create confusion and delay, and would waste time. PIRE's only relevant response is that there was no proof that allowing this evidence would delay the trial, which mere assertion is not sufficient to show that the district court abused its discretion. We accord the district court "great latitude in the admissibility of evidence." United States v. Gilley, 836 F.2d 1206, 1213 (9th Cir.1988); Churchill v. F/V Fjord, 857 F.2d 571, 579 (9th Cir.1988). There was no abuse of discretion.
 
 
 14
 introduction at the summary judgment stage of the proceedings. To the extent that the district court can consider inadmissible evidence at summary judgment, see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), this argument is not persuasive.
 
 V
 
 15
 The district court granted P & G's motion for summary judgment on several claims. PIRE appeals two of these rulings.
 
 
 16
 * The tort of negligent interference with economic relations originated in J'aire v. Gregory, 24 Cal.3d 799 (1979). In J'aire, the plaintiff successfully sued the defendant contractor because the contractor negligently failed to complete construction of a building in which the plaintiff had a restaurant. The question was when the contracting party owes a duty to a noncontracting party. The court held that "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity." Id. at 804 (emphasis added). PIRE never alleges that P & G negligently performed its contract with the Foundation. Indeed, all of the evidence indicates that P & G made its donations and ran its campaign as required by the Procter & Gamble/Foundation contract. Without a showing of negligence, summary judgment was appropriate.
 
 B
 
 17
 PIRE next argues that the district court erred in granting summary judgment on its intentional interference with prospective business advantage claim. PIRE contends that intentional interference with prospective economic advantage is basically the same as interference with contract, except that an actual contract need not exist. PIRE then argues that the district court must have made a mistake in granting summary judgment because it did not grant summary judgment on the interference with contract claim. PIRE reasons that if there were a triable issue of fact on the latter claim, there must have been one on the former claim as well. Although PIRE's description of the two torts is correct in the abstract, PIRE alleges interference with different parties in its two claims. For the claim of intentional interference with contract, PIRE alleges that P & G induced the Foundation to breach its contract with PIRE. For the intentional interference with prospective business claim, PIRE contends that P & G's involvement with the Foundation affected PIRE's ability to solicit donations from other parties, not from the Foundation itself. Therefore, PIRE contends, these claims are unrelated. The district court could have correctly granted summary judgment on one, but not the other.
 
 
 18
 Summary judgment was appropriate for two reasons. First, in order to prove intentional interference with prospective economic advantage, the plaintiff must demonstrate a non-contractual relationship which had "the potential to develop into a full contractual relationship." Buckaloo v. Johnson, 14 Cal.3d 815, 828-29 (1975). PIRE is alleging that it lost donations due to the relationship between P & G and the Foundation. But PIRE never shows that receiving donations would come to fruition as a "full contractual relationship" for the purposes of this tort.
 
 
 19
 Second, the district court held that PIRE presented no evidence to establish the causation and damages elements of the claim. Although we accord this finding no deference, we conclude from our independent review of the record that it is correct. PIRE has presented no evidence to demonstrate a causal nexus between anything that P & G may have done and any drop in third-party donations to PIRE. Summary judgment was indeed appropriate.
 
 VI
 
 20
 P & G requests sanctions against PIRE for filing this appeal. "An appeal is frivolous when the result is obvious or the appellants' arguments are wholly without merit." Bell v. City of Kellogg, 922 F.2d 1418, 1425 (9th Cir.1991). PIRE's arguments are not without merit altogether. P & G's request is denied.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3